**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH L. BABLE, | ) | |
| | ) | Civil Action No. 11 –145 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| DEPUTY B. CORBIN and THE | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF PENNSYLVANIA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Joseph L. Bable ("Petitioner"), a state prisoner incarcerated at the State Correctional Institution at Huntingdon, has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition will be denied.

## I. RELEVANT FACTUAL AND PROCEDURAL HISTORY

On March 12, 2003, Petitioner burglarized a residence in Prospect, Pennsylvania in search of items that he could trade for crack cocaine. The crime escalated into a robbery after the homeowner came home for lunch and discovered Petitioner in his driveway. The homeowner, upon realizing that a crime was in progress, took the keys from Petitioner's car and parked his truck behind it to prevent Petitioner's escape. Petitioner, upon discovering this situation, threatened the victim with a loaded .40 caliber Ruger pistol he had already stolen from the residence and demanded the return of his keys and the movement of the homeowner's truck. The incident then devolved into a high speed chase, as the homeowner and then numerous police

officers pursued Petitioner. During the course of this chase, Petitioner fired several gunshots from the aforementioned stolen handgun at the pursuing officers. One of these shots penetrated the windshield of a police cruiser, missing the driver only because the officer had seen Petitioner aiming at him and ducked. At the conclusion of the chase Petitioner was taken into custody by the pursuing officers and charged with multiple offenses. Before trial in Pennsylvania, Petitioner was extradited to Ohio to be resentenced for a probation violation in that state. Eventually, although still serving an Ohio sentence, Petitioner was returned to Butler County, Pennsylvania to face the charges filed against him there.

After a jury trial, Petitioner was found guilty of Robbery, Burglary, Criminal Attempt-Homicide, Theft by Unlawful Taking, Receiving Stolen Property, Terroristic Threats, Simple Assault, Aggravated Assault, Recklessly Endangering Another Person, and Fleeing or Attempting to Elude Police. *See* 18 Pa.C.S. §§ 3701(a)(1)(ii), 3502(a), 901(a), 3921(a), 3925(a), 2706, 2701(a)(3), 2702(a)(2)(d), 2705; 75 Pa.C.S. § 3733 (respectively). On September 22, 2004, he was sentenced to eight to sixteen years in prison for the robbery conviction and a consecutive ten to twenty years for attempted homicide, as well as to two concurrent forty to eighty month sentences for burglary and theft by unlawful taking, a concurrent twenty-one to forty-two months for terroristic threats, and a concurrent term of twelve to twenty-four months for fleeing/attempting to allude police. This total sentence of eighteen to thirty-six years was ordered to run consecutively to any other sentence he was serving.

Petitioner filed a direct appeal to the Pennsylvania Superior Court, alleging that the trial court erred in failing to dismiss his case due to a violation of Rule 600 of the Pennsylvania Rules of Criminal Procedure (speedy trial violation), erred in denying his motion to suppress without a hearing, and erred in the manner in which it conducted voir dire. (Opinion of the Pennsylvania

Superior Court, ECF No. 14-21 at pp.14-21). The Superior Court denied relief and affirmed in a Memorandum Opinion dated April 5, 2006. Id. Petitioner then filed a petition for allowance of appeal wherein he claimed that the trial court had erred by denying his request to hold individual voir dire in a separate room with him present. (Petition for Allowance of Appeal, ECF No. 14-21 at pp.24-25). The Pennsylvania Supreme Court denied his petition by order dated October 24, 2006. (Order denying Petition for Allowance of Appeal, ECF No. 14-21 at p.33).

On October 14, 2007, Petitioner filed a timely *pro se* petition pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA"). (PCRA Petition, ECF No. 14-21 at pp.35-39; No. 14-22; No. 14-23; No. 14-24; No. 14-25; No. 14-26; No. 14-27 at pp.1-3). Counsel was appointed to represent him. After reviewing the case, counsel filed a no-merit letter on February 11, 2008, stating that Petitioner's claims were devoid of merit and requesting permission to withdraw. (No merit letter, ECF No. 14-27 at pp.5-9) On July 14, 2008, the PCRA court permitted counsel to withdraw and announced its intent to dismiss the petition without a hearing. (Memorandum Opinion and Order, ECF No. 14-27 at 12-13, No. 14-28 at 1-5). The PCRA court dismissed the PCRA petition on August 5, 2008. (Order dismissing PCRA petition, ECF No. 14-28 at p.7). In response, Petitioner filed a "Motion to Object to Dismissal of Post Conviction Relief Petition without Hearing" and a "Petition to Reconsider Dismissal of Post Conviction Relief Nunc Pro Tunc" setting forth his explanation for late filing of his response to the proposed dismissal of his PCRA petition. (Order, ECF No. 14-28 at pp.9-13; No. 14-29; No. 14-20 at pp.1-6). After reviewing the filings, the PCRA court declined to reverse its dismissal of the petition. Id.

Petitioner filed a timely notice of appeal. The PCRA court then ordered Petitioner to file a Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement of Matters Complained of on Appeal, which he filed on September 14, 2008. (Concise Statement of Matters

Complained of on Appeal, ECF No. 14-30 at pp.8-14). Petitioner raised 43 claims of error in his Statement, and in its Opinion, the PCRA court addressed only those allegations relating to the dismissal of the PCRA petition without an evidentiary hearing. (Memorandum Opinion and Order Pursuant to Pa.R.A.P. 1925(a), ECF No. 14-30 at pp.16-18). Petitioner filed a voluminous appellate brief (Brief for appellant, ECF No. 14-30 at pp.20-39; No. 14-31; No. 14-32; No. 14-33; No. 14-34 at pp.1-32), and in a Memorandum Opinion dated April 7, 2010, the Pennsylvania Superior Court affirmed the dismissal of the PCRA petition (Memorandum Opinion, ECF No. 14-35 at pp.23-38). Petitioner filed a petition for allowance of appeal (Petition for Allowance of Appeal, ECF No. 14-36 at pp.7-37), which was denied by the Pennsylvania Supreme Court on December 10, 2010 (Order denying Petition for Allowance of Appeal, ECF No. 14-37 at p.6).

The instant Petition for Writ of Habeas Corpus was filed on February 14, 2011. (ECF No. 3). Petitioner asserts the following four grounds for relief:

1. "Denial of due process, ineffective assistance of counsel-denial of presence at every critical stage of trial (jury selection-voir dire)"

2. "Denial of due process, ineffective assistance of counsel failure of trial counsel to call available expert medical witness at trial"

3. "Denial of due process, ineffective assistance of counsel illegal sentence and improper time credit"

4. "Due process, ineffective assistance of counsel governmental interference, violation of Interstate Agreement on Detainers Act (IAD) and governor's warrant"

Id. The Response to the Petition was filed on April 15, 23011. (ECF No. 12).

## II.      STANDARD OF REVIEW

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.

No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Petitioner's judgment of sentence was obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *See*, *e.g.*, Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). *See also* Real v. Shannon, 600 F.3d 302, 309-10 (3d Cir. 2010).

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 687, 693 (2002). It "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations." Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004). As codified at 28 U.S.C. § 2254(d), AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was *contrary to,*[1] *or involved an unreasonable application of,*[2] *clearly established Federal law, as determined by the Supreme Court of the United States*; or

---

[1]     "The test for § 2254(d)(1)'s 'contrary to' clause is whether the state court decision 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it contradicts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.' Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams v. Taylor, 529 U.S. 362, 405 (2000), and Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)). Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court's precedent. *See* Kane v. Garcia Espitia, 546 U.S. 9 (2995)." Roundtree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (bracketed text in original) (parallel citations omitted).

[2]     "The test for § 2254(d)(1)'s 'unreasonable application of' clause is as follows: '[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case.' Rompilla v. Beard, 545 U.S. 374,

> (2) resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence presented in the State court proceeding.*[3]

(Emphasis added).

Importantly, regardless of whether a state court has adjudicated a claim on the merits so as to invoke review under the standard set forth in § 2254(d), a federal habeas court must presume that all of the state court's factual findings are correct unless the presumption is rebutted by clear and convincing evidence. *See*, *e.g.*, Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)). *See also* Weeks v. Snyder, 219 F.3d 245, 259 (3d Cir. 2000) (quoting Marshall v. Longberger, 459 U.S. 422, 434 (1983), for the proposition that habeas review does not permit a federal court to redetermine the credibility of witnesses whose demeanor has been observed by the state court); Miller-El v. Cockrell, 537 U.S. 322, 339-41 (2003).

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To

---

380 (2005) (quoting Wiggins v. Smith, 539 U.S. 510, 519, 520 (2003)). For purposes of § 2254(d)(1), '[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous.' Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' Id. at 75-76, 123 S. Ct. 1166 (quoting Williams v. Taylor, 529 U.S. 362, 411 (2000)). Rather, '[t]he state court's application of clearly established law must be objectively unreasonable' before a federal court may grant the writ. Andrade, 538 U.S. at 75." Roundtree, 640 F.3d at 537 (parallel citations omitted).

[3]    "The test for § 2254(d)(2)'s 'unreasonable determination of facts' clause is whether the petitioner has demonstrated by 'clear and convincing evidence,' § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. *See* Rice v. Collins, 546 U.S. 333, 338-39 (2006) ('State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)); *see also* Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009) ('Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence.'). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Cullen v. Pinholster, – U.S. – [ ], 131 S. Ct. 1388, 1401-03 (2011)." Roundtree, 640 F.3d at 537-38 (parallel citations omitted).

comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review. *See*, *e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838 (1999). Petitioner has the burden of establishing that exhaustion has been satisfied. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state prisoner's claims prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995). A petitioner shall not be deemed to have exhausted state remedies, however, if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). An application for a writ of habeas corpus may be denied on the merits, however, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State. 28 U.S.C. § 2254(b)(2).

## III.    DISCUSSION

### A.  Claim One

Petitioner's first claim relates to voir dire. Jury selection took place on August 5, 2004. Although Petitioner's trial counsel requested individual voir dire in a separate room, that request was denied. Voir dire was held in open court and prospective jurors were individually

questioned at sidebar. Petitioner's trial counsel did not request that Petitioner be allowed to participate in that questioning. Petitioner maintains that he was denied his right to participate in voir dire, which impaired his ability to select an impartial and unbiased jury.

Petitioner raised a related issue in his post-sentence motion for a new trial. Specifically, he argued that the trial court erred by denying defense counsel's request to have individual voir dire conducted in a separate room with him present. In denying this claim, the trial court stated as follows:

> . . . . We note that it is the sound discretion of this Court to choose the method of jury selection and voir dire. Commonwealth v. Hackett, 735 A.2d 688, 691 (Pa. 1999). The Defendant had no right to individual voir dire since this case was not a capital case. Pa.R.Crim.P. 631(E).
>
> A defendant has a "right to a public trial, under both the United States Constitution and the Pennsylvania Constitution, [which] include[s] the right to have the jury that was to try him selected in public." Commonwealth v. Johnson, 309 Pa.Super. 367, 455 A.2d 654, 662 (1983). In the present case, jury selection was public; it took place in open court, notwithstanding some activity at sidebar. The sidebars that did take place were conducted at the request of defense counsel. (Trial Transcript of 8/5/04 at 25). After reviewing the transcript of the counsel meeting in chambers and of the subsequent jury selection and voir dire, we point out that at no time did defense counsel request to bring the Defendant to sidebar. (Trial Transcript of 8/5/04). Nor was there mention of any requests by the Defendant to hear what was being said during sidebar. (Trial Transcript of 8/5/04). Moreover, the Defendant was present in the courtroom and was no more than fifteen feet away from defense counsel at all times relevant. At no time did this Court prohibit defense counsel from conferring with the Defendant at counsel-table. We take into account the fact that "[a] defendant's presence in chambers and at sidebar is not required where he is represented by counsel." Commonwealth v. Boyle, 447 A.2d 250, 253 (Pa. 1982), citing Rogers v. United States, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975).

(ECF No. 14-19 at pp. 27-28).

Petitioner raised the same issue on direct appeal but the Pennsylvania Superior Court found the issue to be waived because Petitioner did not cite any case law to support his argument. (ECF No. 14-21 at pp.20-21).

In his PCRA petition, Petitioner alleged that his attorney was ineffective during the jury selection process. Citing to the trial court's Order denying Petitioner's Motion for New Trial, the PCRA court stated that it "found nothing in the record indicating that [trial counsel] was ineffective during jury selection." (ECF No. 14-28 at p.2). On appeal, the Pennsylvania Superior Court found Petitioner's ineffectiveness claim regarding voir dire to be without merit stating that he had failed to "demonstrate he was prejudiced by his omission from the sidebars conducted during the voir dire. The jury was selected in open court and [Petitioner] fail[ed] to present any evidence that the jury was not fair and impartial." (ECF No. 14-35 at p.31).

To the extent this claim has been exhausted, whether couched in terms of trial court error or trial counsel ineffectiveness, the Court finds that Petitioner is not entitled to habeas relief.

A criminal defendant has a federal constitutional right, under the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth and Fourteenth Amendments, to be present during all phases of his criminal trial. The United States Supreme Court has determined that "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." Illinois v. Allen, 397 U.S. 337, 338 (1970) (citing Lewis v. United States, 146 U.S. 370 (1892)). In addition, the Supreme Court "has assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge. . . . Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence

would contribute to the fairness of the procedure."[4]  Kentucky v. Stincer, 482 U.S. 730, 745 (1987) (quotation marks and internal citation omitted); *see also* Faretta v. California, 422 U.S. 806, 819 n.15 (1975).

The Supreme Court has explicitly affirmed that voir dire is a critical stage of the criminal proceeding, during which the defendant has a constitutional right to be present.  Gomez v. United States, 490 U.S. 858, 873 (1989) (citing Lewis, *supra* at 374).  The determination that voir dire is a critical stage of trial flows directly from the recognition that a defendant's "life or liberty may depend upon the aid which, by his personal presence, he may give to counsel and to the court and triers in the selection of jurors."  Lewis, *supra* at 373.  However, certain decisions regarding the conduct of voir dire are properly made by counsel alone.  *See*, *e.g.*, Gonzalez v. United States, 553 U.S. 242 (2009) (holding that defense counsel may decide whether to consent to voir dire proceedings before a federal magistrate judge).

Notably, the Third Circuit Court of Appeals recently addressed a factually similar case to the one at hand and stated that the decision to have a criminal defendant present or not during voir dire conducted at sidebar is a tactical one properly made by counsel and does not require the defendant's express consent.  United States v. Johnson, 677 F.3d 138, 141 (3d Cir. 2012).   In Johnson, the criminal defendant asserted that the district court's individual voir dire procedure violated his constitutional rights because the judge questioned prospective jurors at sidebar outside of his presence.  The Third Circuit stated as follows:

---

[4] Article I, § 9 of the Pennsylvania Constitution and Pennsylvania Rule of Criminal Procedure 602 guarantee the right of an accused to be present in the courtroom at every stage of a criminal trial.  Commonwealth v. Rompilla, 554 Pa. 378, 721 A.2d 786, 793 (Pa. 1998); Commonwealth v. Ford, 539 Pa. 85, 650 A.2d 433, 440 (Pa. 1994). This includes the impaneling of the jury, which process is crucial to the preservation of the right to an impartial jury as guaranteed by the Pennsylvania Constitution.  Commonwealth v. Ingber, 516 Pa. 2, 531 A.2d 1101, 1102 (Pa. 1987).

> During jury selection, the District Court followed the customary procedure of questioning prospective jurors first in open court and later individually at sidebar. Johnson remained at the defense table during the sidebar proceedings, which were on the record. The District Court ruled on challenges for cause at sidebar, and thereafter counsel returned to their tables to mark their peremptory challenges.
>
> Johnson argues that this procedure violated his constitutional right to be present at all stages of his trial. But neither Johnson nor his counsel objected to the procedure during jury selection, even when prompted to do so by the District Court. The decision not to object at sidebar and outside the presence of the defendant is a tactical decision similar to the one at issue in Gonzalez v. United States, 553 U.S. 242 (2008). In Gonzalez, the Supreme Court held that "express consent by counsel suffices to permit a magistrate judge to preside over jury selection in a felony trial." Id. at 250.
>
> . . . .
>
> An attorney's obligation to consult with his client "does not require counsel to obtain the defendant's consent to 'every tactical decision.'" Florida v. Nixon, 543 U.S. 175, 187 (2004) (quoting Taylor v. Illinois, 484 U.S. 400, 417-18 (1988)). As with the choice to proceed before a magistrate judge during voir dire, the decision to have a criminal defendant present – and in close proximity to individual jurors – during individual voir dire conducted at sidebar is tactical and does not require the defendant's express consent. Like counsel in Gonzalez, Johnson's lawyer consented to the jury selection procedures and thereby waived his client's right to challenge them.

Johnson, 677 F.3d at 141-42.[5] Other federal courts have observed that a defendant's presence at voir dire is not a structural right whose violation constitutes per se error. *See* United States v. Rivera-Rodriguez, 617 F.3d 581, 604 (1st Cir. 2010), *cert. denied*, 131 S. Ct. 968 (2011); United States v. Riddle, 249 F.3d 529, 535 (6th Cir. 2001); United States v. Feliciano, 223 F.3d 102, 111-12 (2nd Cir. 2000); Davis v. Booker, 2006 U.S. Dist. LEXIS 75712 (E.D. Mi. Oct. 18, 2006). *See also*, Matthews v. Crosby, 2005 U.S. Dist. LEXIS 37872 (M.D. Fla. Dec. 29, 2005)

---

[5] Like the United States Supreme Court, the Pennsylvania Supreme Court has recognized that the right to be present in the courtroom during one's trial is not absolute. The Pennsylvania Supreme Court has stated that a "defendant's presence in chambers and at sidebar is not required where he is represented by counsel." Commonwealth v. Boyle, 498 Pa. 486, 447 A.2d 250, 253 (Pa. 1982).

(holding that there is no constitutional requirement that a defendant be physically present at the bench when preemptory challenges are exercised).

To the extent Petitioner's claims regarding jury selection were properly exhausted in the state courts, he is not entitled to habeas relief because he has not shown that the state courts' decisions on these claims were contrary to or involved an unreasonable application of clearly established federal law. Nor has he shown that they were based on an unreasonable determination of the facts in light of the evidence presented. While Petitioner had the clear constitutional right to participate in the jury selection process, that right was not compromised here where Petitioner was in the courtroom, albeit not present at sidebar conferences that were conducted at the request of his counsel, his counsel questioned potential jurors in open court, notwithstanding the sidebar conference which may have been outside the range of his hearing, no objection was made regarding the manner in which voir dire was conducted, and the proceedings, including the sidebar conferences, were transcribed by the court reporter. There is no constitutional right to be present "when presence would be useless, or the benefit but a shadow." Snyder v. Massachusetts, 291 U.S. 97, 106-07 (1934).

Furthermore, Petitioner's claim that the trial court erred in denying defense counsel's request to conduct individual voir dire in a separate room with him present is also without merit. In this case, defense counsel requested that individual voir dire be held in a separate room because, in his opinion, it would be more efficient and save time. Specifically, he planned on asking questions to each prospective juror and rather than have them go up to sidebar one-by-one he thought that it would be easier if they were brought into the jury room one-by-one and questioned with Petitioner present. While his request was initially granted, it was soon revoked because of security concerns and complications. Individual voir dire took place at sidebar.

The Sixth Amendment right to a public trial applies to voir dire proceedings.

Jury selection is an integral and critical component of any criminal proceeding which must, presumptively, be open to the public and the press; while the Sixth Amendment right to public trial is not absolute and inflexible, closure is and should be the rare exception, and may not be ordered absent careful balancing of competing interests, consideration of alternatives to closure, and articulation of findings.

Constant v. Pa. Dep't. of Corr., 912 F. Supp. 2d 279 (W.D. Pa. 2012) (citing Presley v. Georgia, 558 U.S. 290 (2010)).

Petitioner had no constitutional right to individual voir dire conducted in a separate room. Nevertheless, individual voir dire was conducted in his case, albeit at sidebar but at the request of his counsel, and Petitioner has not shown any evidence of prejudice resulting from this process. The voir dire process implemented by the trial court in this case did not deny Petitioner his right to a fair and impartial jury and the trial court's exercise of its discretion to not allow individual voir dire in a separate room did not render Petitioner's trial fundamentally unfair. Therefore, he is not entitled to habeas relief on this claim.

Finally, a claim of ineffectiveness of counsel for either failing to have Petitioner present at sidebar or to raise the issue on appeal also fails because Petitioner is unable to meet either prong of the test announced in Strickland v. Washington, 466 U.S. 668 (1984). To show that counsel was ineffective, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. Id. at 687-88. Petitioner conclusively asserts that he was denied the right to select an impartial and unbiased jury but he has not identified a single juror that should have been excluded or any aspect of the jury selection process that would have been different had he been included. See Gambino v. Warden of N.J. State Prison, 2013 U.S. Dist. LEXIS 52, at *42-43 (D. N.J. Jan. 2, 2013) (citing N.J. v. Gambino, No. A-3926-

06T4, 2009 N.J. Super. Unpub. LEXIS 582, 2009 WL 735836, at *3 (N.J. Super. Ct. App. Div. Mar. 23, 2009)).  Without such information, Petitioner has failed to demonstrate how his counsel was ineffective.  Moreover, appellate counsel could not have been ineffective for failing to raise a claim on appeal regarding Petitioner's absence at sidebar because any such claim would have been deemed without merit under both Pennsylvania and federal law.  *See*, *supra*, n.5.  *See also*, United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective assistance of counsel based on an attorney's failure to raise a meritless argument.").  Thus, these claims do not merit habeas relief.

## B.  Claim Two

Petitioner's second claim is that trial counsel was ineffective for failing to present expert medical testimony from Dr. Grace McGorrian that, in her opinion, he lacked the ability to form specific intent to kill at the time of the crime.  Petitioner claims that this evidence would have precluded the jury's finding of guilt for attempted murder.  Respondents do not dispute that this claim has been properly exhausted in the state courts and therefore is subject to review under 28 U.S.C. § 2254(d)(1).

In affirming the dismissal of this claim in his PCRA appeal, the Pennsylvania Superior Court found as follows:

> [Petitioner] concedes that Dr. McGorrian found that he did not meet the standard for an insanity defense.  [Petitioner] further concedes that while Dr. McGorrian found that he met the standard for diminished capacity, the defense of diminished capacity is inapplicable for all crimes except murder of the first degree.  Because [Petitioner] was not convicted of murder of the first degree, we conclude that his underlying claim is without arguable merit and counsel was not ineffective.

(ECF No. 14-35 at pp.28-29) (citations omitted).

According to Dr. McGorrian's report, Petitioner did not meet the M'Naghten standard for the insanity defense but did so for diminished capacity because she did "not believe he was capable of forming intent to kill an officer, given his impairment that night." (ECF No. 14-34 at 27). Specifically, she reported that

> [t]he facts as gleaned from the Defendant's consistent story, his changing clinical appearance as he recovered from cocaine addiction, and the available legal record speak to his recklessness on the night of the crime, but not to plotting, planning, or thinking in any meaningful way, or considering adequately the consequences of his acts before the crime. Those elements are usually considered requisite in consideration of first degree murder cases (Black's Law Dictionary, 1979, p.384), and are surely relevant as well when attempted homicide charges are brought. His committed relationship to the girlfriend and son, and his steady work behavior argue that had he not been driven by addiction to seek more cocaine, he would not have embarked on his criminal behavior that night. His lack of prior history of violence against persons also argues against purposeful or even knowing "attempted homicide," but for reckless, albeit extremely dangerous, behavior.

> Heavy cocaine ingestion by IV and smoked routes, and/or severe sleep deprivation can both produce complete detachment from reality, including paranoia and hallucinations. This man did not attempt to convince me of more symptoms than he really had (although that would have been clinically possible, and would have helped an insanity defense), which to this examiner suggests he is truthfully presenting a tale of cocaine fueled "super stupid quick decisions."

Id. at pp.27-28.

In Pennsylvania, a conviction for attempted murder requires the Commonwealth to prove beyond a reasonable doubt that the defendant had the *specific intent to kill* and took a substantial step towards that goal. 18 Pa.C.S. §§ 901, 2502 (emphasis added). Since criminal attempt requires a specific intent to commit a crime, attempted murder is defined as the commission of an act, with intent to kill, which constitutes a substantial step towards the commission of murder. *See* Commonwealth v. Griffin, 456 A.2d 171, 177 (Pa. 1983). Furthermore, since the only degree of murder that requires an intent to kill is first-degree murder, attempted murder logically must be attempted murder of the first degree. *See* id. Since second-degree murder and third-

degree murders are basically unintentional killings, it would be logically impossible for a person to attempt murder of the second or third degree, since doing so would require the person to intend to commit an unintentional killing. *See* id. at 177. Therefore, in order to convict a person of attempted murder, an intent must be shown. *See* id. at 178.

In Pennsylvania, "diminished mental capacity may be a defense to a charge requiring a specific intent."[6] Commonwealth v. Nelson, 523 A.2d 728, 733 (Pa. 1987) (citing

---

[6] It appears as though diminished capacity has been recognized by states in two forms. Relevant here is a *mens rea* form of diminished capacity, which functions as a failure-of-proof defense. In this form, evidence of mental abnormality is not offered by the defendant to partially or fully excuse his conduct, but rather as evidence to negate an element of the crime charged, which is almost always the *mens rea* element. *See* State v. Mott, 931 P.2d 1046, 1050 (Ariz. 1997). The characterization of diminished capacity as a "defense" as used in this first form is not entirely proper, *see* State v. Joseph, 590 S.E.2d 718, 723 (W. Va. 2003), because "it does not provide any ground for acquittal not provided in the definition of the offense[,]" United States v. Pohlot, 827 F.2d 889, 897 (3d Cir. 1987). Rather it is merely a rule of evidence. Id. In this form, "diminished capacity either negates the state of mind required for a particular offense, if successful, or it does not." State v. Breakiron, 532 A.2d 199, 208-09 (N.J. 1987). It is "not considered a justification or excuse for a crime, but rather an attempt to prove that the defendant, incapable of the requisite intent of the crime charged, is innocent of that crime but is most likely guilty of a lesser included offense; thus, a defendant claiming diminished capacity contemplates full responsibility, but only for the crime he or she actually committed." Joseph, 590 S.E.2d at 723.

Pennsylvania has adopted a limited-use approach of this form of diminished capacity by limiting the introduction of mental-condition evidence only to murder prosecutions. *See* Commonwealth v. Swartz, 484 A.2d 793, 796 (Pa. Super. 1984). Under this version of diminished capacity, "a defendant attempts to negate the element of specific intent to kill and, if successful, first degree murder is reduced to third degree murder." *See* Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005) (quoting Commonwealth v. McCullum, 738 A.2d 1007, 1009 (Pa. 1999)).

The second form of diminished capacity is referred to as "partial responsibility." "This approach 'permits the jury to mitigate the punishment of a mentally disabled but sane offender in any case where the jury believes that the defendant is less culpable than his normal counterpart who commits the same criminal act. Unlike the *mens rea* model, however, the diminished [or partial] responsibility defense does not permit the jury to distinguish between various degrees of liability of the same crime because the expert testimony admitted does not correlate to the various statutory *mens rea* elements. Instead, the diminished [or partial] responsibility defense permits the jury to treat the offender's mental abnormality as a formal mitigating factor which 'shall always remove the offense into a separate category carrying a lower maximum penalty.'" United States v. Skodnek, 896 F. Supp. 60, 63 n.3 (D. Mass. 1995) (quoting Arenella, The Diminished Capacity and Diminished Responsibility Defenses: Two Children of a Doomed Marriage, 77 Col.L.Rev.827, 829 (1977) (citing to H.L.A. Hart, Punishment and Responsibility, 15 (1968)). Under this form, a defendant may not be considered fully responsible for a crime due to his mental condition "even if the technical elements of an offense are satisfied" but "the defendant is less culpable and should be convicted of a lesser crime, or, at least, should be punished less severely." United States v. Leandre, 132 F.3d 796, 802 (D.C. Cir. 1998) (internal quotation and citation omitted). Although this version of the doctrine is recognized in only a few states, and "[w]hile courts have generally refused to integrate the defense of partial responsibility into substantive criminal law, it has long been applied, at least implicitly by judges during sentencing." Id.

.

Commonwealth v. Zettlemoyer, 454 A.2d 937 (Pa. 1982); Commonwealth v. Weinstein, 451 A.2d 1344 (1982); Commonwealth v. Brantner, 406 A.2d 1101 (Pa. 1970); Commonwealth v. Walzack, 360 A.2d 914 (Pa. 1976)).  As a general matter, a finding of diminished capacity provides much more limited relief than a finding of legal insanity.  Zettlemoyer, 454 A.2d at 943 (citing Weinstein, 451 A.2d at 1344).  Legal insanity (*i.e.*, M'Naghten insanity) may be a defense to any "charged offense."  18 Pa.C.S.A. § 315(a).

In describing diminished capacity, the Pennsylvania Supreme Court has stated that "psychiatric testimony which speaks to the legislatively defined state of mind encompassing a specific intent to kill is admissible."  Weinstein, 451 A.2 at 1347.  However, psychiatric testimony is irrelevant unless "it speaks to mental disorders affecting the cognitive functions [of deliberation and premeditation] necessary to formulate a specific intent."  Id.  Psychiatric evidence that a defendant lacked the ability to control his actions or that he acted impulsively will not establish diminished capacity.  Zettlemoyer, 454 A.2d at 943 (citing Weinstein, 451 A.2d at 1350).  *See also* Commonwealth v. Travaglia, 661 A.2d 352, 359 (1995) (citing cases).  Furthermore, the diminished capacity defense requires a defendant to admit general culpability.  Commonwealth v. Legg, 711 A.2d 430, 433 (Pa. 1998).

Importantly, and an issue here, is whether, in Pennsylvania, the doctrine of diminished capacity can be applied to attempted murder.  In Petitioner's PCRA appeal, the Pennsylvania Superior Court citied its decision in Commonwealth v. Swartz, 484 A.2d 793, 796 (Pa. Super. 1984), which held that diminished capacity could not be used against charges of specific intent crimes other than first-degree murder and it found that the doctrine did not apply in Petitioner's case because he was not charged with murder in the first degree.  In Swartz, the appellant was

convicted of robbery and theft. While he admitted the theft, he denied that he had threatened or intentionally placed the bank teller in fear of immediate bodily injury and therefore did not have the specific intent required for his robbery conviction. The issue on appeal was whether the trial court erred in prohibiting him from presenting a diminished capacity defense to negate the specific intent required for his robbery conviction. The trial court had held that such defense was only available in first degree murder prosecutions partially relying on Subcommittee Note to Pennsylvania's Suggested Standard Jury Instruction 5.01B, which, at that time, read as follows:

> The instruction recommended above implements Commonwealth v. Walzack, 360 A.2d 914 (Pa. 1976). Walzack held that psychiatric evidence is admissible to negate the element of specific intent required for first degree murder. The court expressly overruled the contrary holdings of a line of prior cases including Commonwealth v. Weinstein, 274 A.2d 182 (Pa. 1971) and Commonwealth v. Ahearn, 218 A.2d 561 (Pa. 1966). The court labeled the doctrine which it recognized in Walzack "diminished capacity" since it relates to the accused's ability to perform a specific cognitive process, *see* Walzack, *supra* at n.6

> The court left open the question of whether the doctrine of diminished capacity should apply to other specific *mens rea* crimes. In the opinion of the subcommittee it should not. First degree murder is unique both in terms of the severity of the penalty and the quality and intensity of the intent required by the legislative definition. Compare, for example, the "intent to deprive" required for theft under Crimes Code § 3921 with the willful, deliberate and premeditated intent to kill required for first degree murder. A person who could not form an "intent to deprive" would probably qualify for the complete insanity defense and would have no need for the diminished capacity doctrine. Applying the type of analysis used in Walzack it would appear that when the crime charged is not first degree murder, the probative value of psychiatric evidence of diminished capacity would be outweighed by dangers of unduly complicating the issues, confusing the jury and prolonging the trial.

Former Pa. SSJI (Crim) 5.01B.[7]

The Swartz court initially noted that

_____

[7] The Subcommittee Note now states that it "seems settled that the defense [of diminished capacity] is limited to first-degree murder." Pa. SSJI (Crim) 5.01B (2012).

[a]ll of the Supreme Court's past pronouncements on the doctrine of diminished capacity have been made in the context of premeditated murder cases. However, general language in <u>Commonwealth v. Walzack</u>, 360 A.2d 914, 919 (1976), where the court stated: "The thrust of the doctrine is to challenge the capacity of the actor to possess a particular state of mind required by the legislature for the commission of a certain degree of the crime charged", seems to imply the defense is available to other crimes. Similarly, in <u>Commonwealth v. Brantner</u>, 406 A.2d 1011, 1014 (1979), the court stated: "Appellant is correct in noting that this jurisdiction recognizes diminished mental capacity as a defense to a charge requiring a specific intent." As the [Pennsylvania Supreme Court] in both of the above cases did not limit its language to homicide situations, it would appear to be a reasonable inference that diminished capacity may be applicable to other crimes.

<u>Swartz</u>, 484 A.2d at 795.

The <u>Swartz</u> court then looked to the Pennsylvania Supreme Court's more recent decision in <u>Commonwealth v. Garcia</u>, 479 A.2d 473 (Pa. 1984), which addressed the specific issue of whether diminished capacity could be applied to crimes other than murder in the first degree. In <u>Garcia</u>, the defendant raised diminished capacity as a defense to both felony murder and robbery. He argued that he was incapable of forming the intent to steal from the victim and hence he could not be held liable for robbery and similarly, could not be culpable of felony murder. The Supreme Court noted that "to date" the doctrine of diminished capacity had only been applied to first degree murder but found that the doctrine was nevertheless unavailable to <u>Garcia</u> since he admitted to the theft, thereby admitting to the specific intent required for robbery. Although the Pennsylvania Supreme Court stated in <u>Garcia</u> that "[p]roper psychiatric testimony is admissible only to negate the specific intent required to establish first degree murder[]" <u>id</u>. at 477 (citing <u>Weinstein</u>, 451 A.2d at 114), <u>Swartz</u> declared the court's holding advisory because the discussion of diminished capacity was unnecessary to the resolution of <u>Garcia</u>. Nevertheless, the <u>Swartz</u> court found that the Pennsylvania Supreme Court's reasoning in <u>Garcia</u> expressed the majority's view "indicating the legislature would disprove extending diminished capacity beyond

first degree murder[,]" and declined to find error in the trial court's refusal to hear and consider Swartz's proffered psychiatric evidence that he did not have specific intent to commit the robbery. <u>Swartz</u>, 484 A.2d at 796.

Notwithstanding the above, there appears to be some hesitation by the lower Pennsylvania state courts to bar the doctrine of diminished capacity in attempted murder cases. This Court's research unveiled only two cases where the issue arose but in both cases the Courts of Common Pleas allowed and/or considered psychiatric evidence relating to the defendants' specific intent to commit murder, a necessary element for the crime of attempted murder.

In <u>Commonwealth v. Gadsden</u>, 2003 Pa. D & C. Dec. LEXIS 195 (Pa. County Ct. 2003), the trial court noted the precedent established by the Pennsylvania Supreme and Superior Courts – that the defense of diminished capacity cannot be used outside of first-degree murder charges, but stated that it was a "stretch to equate attempted murder and lesser specific intent crimes, such as robbery, in order to prohibit the use of the diminished capacity defense. . . . Attempted murder is near enough in intent to first-degree murder so as to be within the penumbra of first-degree murder." <u>Id</u>. at *5. However, the Common Pleas Court seemingly relied upon an unpublished Pennsylvania Superior Court decision which appears to have either been overruled or inconsistent with its position on the similar defense of voluntary intoxication.[8] Nevertheless, the trial court allowed expert testimony of the defendant's alleged diminished capacity and/or voluntary intoxication as a defense to the charge of attempted murder. <u>Id</u>. at *6. *See* <u>Commonwealth v. Gadsden</u>, 869 A.2d 7 (Pa. Super. Ct. 2004) (affirming defendant's judgment of sentence).

---

[8] The Pennsylvania Superior Court has held that a defendant's level of intoxication is inadmissible in an attempted murder case because "the lowering of the degree [of the charge] is logically impossible. There is simply no such crime as attempted second or third degree murder." <u>Commonwealth v. Williams</u>, 730 A.2d 507, 512 (Pa. Super. 1999).

A similar issue was addressed in <u>Commonwealth v. Scott</u>, 578 A.2d 933 (Pa. Super. Ct. 1990), involving a cross-appeal from a judgment which dismissed defendant's charge of first degree murder and attempted criminal homicide under the Mental Health Procedures Act, 50 Pa.C.S.A. § 7403. Under this Act, a trial court can direct an incompetency examination to include "an opinion as to whether [the defendant] had the capacity to have a particular state of mind, where such state of mind is a required element of the criminal charge." <u>Id</u>. at § 7402(e)(4)(iv). This is in reference to a "diminished capacity" defense. In <u>Scott</u>, the trial court dismissed the first degree murder and attempted criminal homicide charges finding that the expert testimony revealed that the defendant lacked a specific intent to kill. This order was affirmed on appeal but the issue on appeal was not based on the trial court's decision regarding diminished capacity. If it had been, then the Pennsylvania Superior Court indicated that "different considerations" would have governed the appeal, specifically noting that the Pennsylvania Supreme Court "has indicated that the diminished capacity defense operates only to negate the specific intent required for first degree murder, and is not available for other specific intent crimes." <u>Id</u>. at n.18.

As to the issue at hand, whether Petitioner's trial counsel was ineffective in failing to present Dr. McGorrian's testimony regarding Petitioner's mental state at the time of the crime, the state courts held, as a matter of state law, that the doctrine of diminished capacity was not available to Petitioner. While there appears to be some confusion among lower Pennsylvania courts as to whether the diminished capacity doctrine can be applied to the crime of attempted murder, it is clear from Pennsylvania Superior and Supreme Court decisions that Pennsylvania has limited the applicability of the doctrine to the crime of murder in the first degree. Admittedly, at first glance, this limitation appears to be arbitrary, and somewhat illogical with

regard to the crime of attempted murder, and the rationale behind it is not clearly set forth in Pennsylvania case law,[9] the question before the Court is not whether Pennsylvania is right or wrong in choosing to adopt this limited approach.  Under AEDPA standards, the question is whether the state courts' decision that counsel was not ineffective was contrary to or involved an unreasonable application of, clearly established federal law.  Clearly it was not.  Because counsel cannot be deemed ineffective for failing to present evidence of a defense that would have been inapplicable under state law to Petitioner's case, Petitioner is not entitled to habeas relief.  *See* United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective assistance of counsel based on an attorney's failure to raise a meritless argument.").

Finally, in denying Petitioner's clam that counsel was ineffective in his trial strategy, the PCRA court stated that defense counsel "attempted to portray the defendant as a non-violent person who, in committing the crimes charged, was only seeking to satisfy his addiction to cocaine[,] [and] [t]his strategy was used, among other reasons, it seems, to combat the *mens rea* element of the charge of attempted homicide."  (ECF No. 14-28 at p.3).  On appeal, the Pennsylvania Superior Court affirmed concluding that this trial strategy was reasonable and Petitioner had failed to establish prejudice resulting from the strategy.  (ECF No. 14-35 at p.29-

---

[9] However, in McCarthy v. State, 372 A.2d 180 (Del. 1977), the Delaware Supreme Court set forth a somewhat clear explanation of the diminished capacity doctrine's basic purpose.  Although Delaware does not appear to limit the use of the doctrine to only first degree murder cases, the court explained that

> the salient aspect of the diminished responsibility doctrine is that it does not relieve the defendant of criminal responsibility.  Like "extreme emotional distress", it is a defense of mitigation only.  Criminal responsibility exists, but only for an offense for which the general *mens rea* can be found.  In practice under the doctrine, while conviction for an offense requiring a specific intent was foreclosed, conviction for a lesser-included crime, requiring only a general intent, was not.

Id. at 183 (internal citations omitted).  Therefore, "[a]cceptance of the doctrine requires that there must be some lesser-included offense which lacks the requisite specific intent of the greater offense charged.  Otherwise, . . . the doctrine becomes an impermissible substitute for determining criminal responsibility."  Id.

30).  Specifically, the court found that Petitioner had not demonstrated that the result of the proceedings would have been different had defense counsel not presented the defense that he did and that the testimony of Dr. McGorrian regarding diminished capacity would not have resulted in a lesser conviction.  Id. at p.30.

According to the state courts, Petitioner was unable to show prejudice by establishing that no reasonable jury would have convicted him of attempted murder, even considering Dr. McGorrian's report had it been admissible, and therefore, his trial counsel was not ineffective in his defense.  Petitioner has not demonstrated that this decision is contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented.  Therefore, he is not entitled to habeas relief.

## C.  Claim Three

Petitioner's third claim is that he did not receive proper credit for the time he spent in jail before trial and that his trial counsel was ineffective in failing to correct the sentencing court's miscalculation of his credit for time served.

Following his judgment of sentence, Petitioner filed a motion to modify his sentence based on the fact that he was only given credit for time served of 44 days, despite the fact that he was arrested on March 10, 2003, and sentenced on September 22, 2004.[10]  The sentencing court denied the motion finding that Petitioner received proper credit for the time reflected by the Butler County prison records and that he had no right to any credit for time he served in Ohio on

_____

[10] Petitioner was arrested on March 10, 2003.  In April 2003, authorities from the State of Ohio removed Petitioner from the Butler County Prison.  He was taken to Ohio and not returned to Butler County until July 28, 2004. Petitioner was sentenced in Pennsylvania on September 22, 2004, and his sentence was ordered to run consecutively to his four-year Ohio sentence.

an unrelated case.[11]  In his Statement of Matters Complained of on Appeal, Petitioner argued that

the trial court erred by failing to give him all the credit for time served to which he believed he

was entitled.  Petitioner did not, however, include this claim in his appellate brief to the

Pennsylvania Superior Court.  Therefore, the claim has not been exhausted and is now

procedurally defaulted for purposes of federal habeas review.  *See*, *e.g.*, Charlton v. Wakefield,

No. 07-200, 2010 U.S. Dist. LEXIS 17957, 2010 WL 724521 at *10 (W.D. Pa. March 1, 2010)

(Although raised in his post-trial motion and in his Rule 1925(b) Statement, petitioner's

sufficiency of the evidence claim was not exhausted and procedurally defaulted because he did

not present it in his brief filed with the Superior Court as required by Rules 2111 and 2116 of the

Pennsylvania Rules of Appellate Procedure).

    Nevertheless, Petitioner's claim concerning application of jail time credit is not a proper

claim for federal habeas review.  Federal jurisprudence is well-established that interpretation of

state statutes regarding credit for time served is a matter of state concern, which a federal habeas

court cannot reexamine.  *See*, *e.g.*, Travis v. A.L. Lockhart, 925 F.2d 1095 (8th Cir. 1991)

(holding that a claim for failure to receive pre-sentence jail time credit was "not a proper

function of a federal court under its habeas corpus jurisdiction"); Lewis v. Cardwell, 609 F.2d

926, 928 (8th Cir. 1990) ("the origin of the modern concept of pre-conviction jail time credit

upon the term of the ultimate sentence of imprisonment is a legislative grace and not a

constitutional guarantee."); Bilton v. Beto, 403 F.2d 664, 665 (5th Cir. 1968) (a federal habeas

petitioner's contentions as to when his sentence began to run and the amount of pre-sentence

credit he should have received are matters for the state court to consider); Hoover v. Snyder, 904

---

[11] Petitioner remained in Ohio for fifteen months before being transferred back to Pennsylvania to face trial.  During this time, his trial counsel requested continuances due to Petitioner being unavailable to undergo a psychiatric evaluation that was ordered by the trial court.

F. Supp. 232, 234 (D. Del. 1995) (interpretation of state crediting statutes is a matter of state concern and is not a proper function of a federal habeas court).

In any event, Petitioner's claim is without merit. Pursuant to Pennsylvania statute 42 Pa.C.S. § 9761(b), the sentencing court had the authority to run Petitioner's Butler County sentence concurrent with and/or provide credit for time served on his Ohio sentence. The court, however, did not do so, choosing instead to run Petitioner's sentence consecutive to his Ohio sentence. Petitioner was not statutorily entitled to credit for his Ohio sentence and the sentencing court clearly did not exercise its discretion to give him such credit.

Next, Petitioner's claim that counsel was ineffective for failing to challenge the sentencing court's calculation of his credit for time served is baseless because counsel did in fact make this challenge in a post-sentence motion to modify Petitioner's sentence. In any event, counsel cannot be deemed ineffective for failing to raise a meritless claim. United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective assistance of counsel based on an attorney's failure to raise a meritless argument.").

Finally, Petitioner's claim that his sentence is illegal because the sentencing court imposed a sentence without a commencement date is also meritless. Petitioner raised this claim in his PCRA petition and the Superior Court concluded that Petitioner's sentence was not illegal just because the sentencing court ordered his sentence to run consecutive to his Ohio sentence. As previously noted, the sentencing court elected not to give Petitioner credit for time served for his Ohio sentence and this was at the discretion of the court pursuant to 42 Pa.C.S. § 9761(b). Furthermore, imposition of a sentence consecutive to one already imposed is expressly permitted by statute in Pennsylvania. *See* 42 Pa.C.S. § 9757. By logic, Petitioner's Pennsylvania sentence

could not begin until his Ohio sentence ended. Therefore, for all the reasons stated above, Petitioner is not entitled to habeas relief.

**D. Claim Four**

Petitioner's fourth claim relates to the Interstate Agreement on Detainers and Uniform Criminal Extradition Act. The following background is relevant to this claim.

Petitioner was arrested on March 10, 2003, and his bond was set at $250,000.00. His formal arraignment was held on April 14, 2003. Shortly thereafter, Butler County released Petitioner to authorities in Ohio. Presumably, defense counsel was not aware of Petitioner's whereabouts at this time. In May 2003, defense counsel filed a motion for psychiatric evaluation. The motion was granted but the evaluation could not be performed because Petitioner was unavailable. Defense counsel signed continuances in June, July and October 2003, but the continuances were prepared by the Commonwealth and the stated reason for the continuances was that Petitioner was awaiting a psychiatric evaluation. Allegedly, defense counsel was not aware that Petitioner was being held in Ohio until November 2003. Petitioner remained in Ohio until July 28, 2004, at which time he was brought back to Butler County. Prior to trial, defense counsel filed a motion to dismiss the charges against Petitioner pursuant to Pennsylvania Rule of Criminal Procedure 600, but the motion was denied and Petitioner was eventually brought to trial on August 16, 2004.[12] Also prior to trial, the defense filed a habeas

---

[12] At the time of Petitioner's incarceration Rule 600 provided that when a defendant is incarcerated on a case, trial shall commence no later than 180 days from the date on which the complaint is filed. Former Pa.R.Crim.P. 600(A)(2). Similarly, when a defendant is at liberty on bail, trial shall commence no later than 365 days from the date on which the written complaint is filed against the defendant. Former Pa.R.Crim.P. 600(A)(3). However, in calculating the time-frame in which the trial must commence, the court is required to exclude "(3) such period of delay at any stage of the proceedings as results from: (b) any continuance granted at the request of the defendant or defendant's attorney." Former Pa.R.Crim.P. 600(C).

In a post-sentence motion for judgment of acquittal, defense counsel again raised the Rule 600 violation claim. In denying the motion, the trial court found that the period of time covered by the continuances in Petitioner's case,

corpus petition alleging violations of Articles III and IV of the Interstate Agreement on Detainers ("IAD"). That petition was denied because Petitioner had not complied with the notice requirements of Article III in that he never requested to have the charges against him resolved. The court further found that the release of Petitioner by Butler County officials to the State of Ohio did not invoke a violation of Article IV.

On appeal from his judgment of sentence, Petitioner claimed that the trial court committed reversible error by denying his motion pursuant to the IAD. In a Supplemental Memorandum Opinion issued on March 23, 2005, the trial court found the issue waived because it was improperly raised for the first time on appeal.[13] (ECF No. 14-19 at p.38).

In his PCRA petition, Petitioner claimed that his trial counsel was ineffective for failing to properly argue, both before the trial and on appeal, an issue regarding the IAD. The PCRA court noted that trial counsel did argue this issue prior to trial but nevertheless found the claim to be without merit. (ECF No. 14-28 at p.2). On appeal, the Pennsylvania Superior Court did not explicitly address this claim but ended its Opinion by summarily denying all the remaining claims in Petitioner's appellate brief. (ECF No. 14-35 at p.37).

---

which were signed by defense counsel, was excluded from the period of time in which the Commonwealth was required to bring the case to trial.

In Petitioner's Concise Statement of Matters Complained of on Appeal, Petitioner claim that the trial court committed reversible error by denying his motion to dismiss under Rule 600. In a Supplemental Memorandum Opinion, the trial court noted that it had already addressed the Rule 600 issue in its previous Order denying Petitioner's motion for judgment of acquittal. In his brief on appeal, Petitioner raised the Rule 600 issue once again and argued that the time covered by the continuances filed by defense counsel should not have been excluded because they did not delay the trial. He maintained that trial was delayed because the Commonwealth failed to practice due diligence in bringing him back from Ohio to stand trial. However, the Pennsylvania Superior Court found the trial court's interpretation of the Rule to be consistent with relevant precedent and affirmed the denial of relief.

[13] This finding is odd given the fact that, prior to trial, defense counsel explicitly argued for a petition for writ of habeas corpus based on violations of the IAD. Nevertheless, the claim is unexhausted and procedurally defaulted because Petitioner did not include it in his appellate brief. *See* Charlton v. Wakefield, *supra*.

To the extent Petitioner's claims regarding violations of the IAD, and his related ineffective assistance of counsel claims, have been exhausted, the Court finds that they are without merit for the reasons stated below.

Petitioner's alleged violations of the IAD pertain to the timeliness provisions found in Article III and the transfer without disposition provisions found in Article IV.

The IAD is a compact among 48 states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States. It is a congressionally sanctioned interstate compact within the meaning of the Compact Clause of the United States Constitution, U.S. Const. Art. I § 10 cl. 3, and thus is a federal law subject to federal construction. New York v. Hill, 528 U.S. 110 (2000) (citation omitted); Johnson v. Williams, 666 F.2d 842, 844 n.1 (3d Cir. 1981) ("[T]he IAD has been held to constitute a law of the United States[.]") (citation omitted). Thus, the federal courts have habeas corpus jurisdiction, pursuant to 28 U.S.C. § 2254, over alleged violations of the IAD. Casper v. Ryan, 822 F.2d 1283, 1288 (3d Cir. 1987), *cert. denied*, 484 U.S. 1012 (1988); Johnson v. Williams, 666 F.2d 842, 844 n.1 (3d Cir. 1981). It is codified in Pennsylvania at 42 Pa.C.S. § 9101 *et seq*.

The IAD basically (1) gives a prisoner the right to demand a trial within 180 days; and (2) gives a State the right to obtain a prisoner for purposes of trial, in which case the State must try the prisoner within 120 days of his arrival and must not return the prisoner to his original place of imprisonment prior to that trial. *See*, *generally*, 42 Pa.C.S. § 9101.

The IAD provides at Article III(a), 42 Pa.C.S. § 9101, that:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days *after he*

*shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint*[.]

(Emphasis added). If the prisoner requests final disposition of those charges, then the receiving state must bring him to trial within 180 days of his request for disposition of the charges or dismissal of those charges will result with prejudice. 42 Pa.C.S. § 9101, Art. III(a)-(d).

Respondents are correct that Article III was not implicated in Petitioner's situation because he did not comply with the notice requirement italicized above. Therefore, no violation of Article III of the IAD occurred.

The IAD provides at Article IV(a), 42 Pa.C.S. § 9101, that:

The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated[.]

Once a prisoner arrives in the receiving state the trial must being within 120 days unless extended for good cause. 42 Pa.C.S. § 9101, Art. IV(c). Article IV also sets forth an "anti-shuttling" provision that says the trial must be had prior to the prisoner being returned to the original place of imprisonment. Id. at Art. IV(e). Otherwise, the charges will be dismissed with prejudice. Id.

Respondents are correct that there was no violation of Article IV because Pennsylvania never sent Petitioner back to Ohio without disposition of his case *after* it had procured him under a governor's warrant. Petitioner was arrested in Pennsylvania then sent to Ohio to be resentenced and incarcerated for a probation violation. It was only then that Pennsylvania sought a governor's warrant to have him returned. Once in Pennsylvania, his case was litigated to

completion and then he was sent back to Ohio, his original place of imprisonment, to serve the remainder of that State's sentence. Therefore, no violation of Article IV(e) of the IAD occurred.

Petitioner also alleges a violation of the Uniform Criminal Extradition Act ("Extradition Act"), codified in Pennsylvania at 42 Pa.C.S. § 9121 *et seq*., because he was transferred between Ohio and Pennsylvania on multiple occasions without a pre-transfer hearing or execution of a waiver. *See* 42 Pa.C.S. § 9131 (Rights of accused person under the Extradition Act). The Extradition Act, like the IAD, establishes procedures for the interstate transfer of persons against whom criminal charges are outstanding, but, unlike the IAD, applies to persons at liberty as well as to persons in prison. "A prisoner transferred under the Extradition Act is explicitly granted a right to a pretransfer 'hearing' at which he is informed of the receiving State's request for custody, his right to counsel, and his right to apply for a writ of habeas corpus challenging the custody request. . . . However, no similar explicit provision is . . . found in the IAD." Cuyler v. Adams, 449 U.S. 433, 442 (1981).

The United States Supreme Court has held that "as a matter of federal law that prisoners transferred pursuant to the provisions of the [IAD] are not required to forfeit any pre-existing rights they may have under state or federal law to challenge their transfer to the receiving State." Cuyler, 449 U.S. at 450.[14] In other words, Article IV(d) of the IAD incorporates the procedural safeguards of the Extradition Act which gives prisoners incarcerated in an Extradition Act jurisdiction the right to a pre-transfer hearing to challenge a receiving state's custody request. Id.

_____

[14] In Cuyler, the Supreme Court concluded that a prisoner transferred involuntarily under Article IV of the IAC is "entitled to whatever 'safeguards of the extradition process' he might otherwise have enjoyed . . . [under] the [UCEA] (in those States that have adopted it), as well as any other procedural protections the sending State guarantees persons being extradited from within its borders." Id. at 448, 450. Because the prisoner alleged that state officials had transferred him to another jurisdiction pursuant to Article IV without granting him a pre-transfer hearing to which he would have been entitled had he been transferred under the Uniform Criminal Extradition Act, the Court held that he had adequately stated a § 1983 claim. Id. at 436-37.

To the extent Petitioner claims that following his arrest in Pennsylvania, he was transferred to Ohio and did not receive a pre-transfer hearing pursuant to Article IV(d) of the IAD and the Extradition Act, to which he claims he was entitled, the Court notes that the IAD is inapplicable to this situation. Petitioner was transferred pursuant to a probation violation detainer, and, in Carchman v. Nash, 473 U.S. 716, 726 (1985), the Supreme Court "conclude[d] from the language of the [IAD] that a detainer based on a probation-violation charge is not a detainer based on 'any untried indictment, information or complaint,' . . . ." As such, the IAD does not apply to a detainer based upon a parole violator warrant or to probation violation detainers. Id. *See also*, United States v. Reed, 620 F.2d 709, 711-12 (9th Cir. 1980), *cert. denied*, 449 U.S. 880 (1980). Here, Petitioner was arrested in Pennsylvania and then released to Ohio authorities to be resentenced and incarcerated for a probation violation. His detainer was therefore not based on an untried indictment, information or complaint within the meaning of the IAD. Therefore, Article IV(d) of the IAD, which preserves a prisoner's extradition rights under the laws of the State of incarceration, was not violated.

To the extent Petitioner claims that he was entitled to a pre-transfer hearing solely pursuant to the procedural protections of the Extradition Act, 42 Pa.C.S. § 9131, the Court will assume, without deciding, that he was in fact entitled to such a hearing. *See* Commonwealth ex rel. Jacobs v. Digiacinto, 468 A.2d 1118, 1120 (Pa. Super. Ct. 1983) (finding no basis for distinguishing detainers based on parole violations from those based on criminal prosecutions under the Extradition Act). The Court will also assume, without deciding, that Petitioner was entitled to a pre-transfer hearing when he was subsequently transferred back to Pennsylvania to face trial on the underlying criminal charges in this case. However, the failure of a sending jurisdiction to provide a pre-transfer hearing pursuant to Article IV(d) of the IAD *and* the

Uniform Criminal Extradition Act does "not amount to fundamental defect which would entitle [] [him] to habeas relief."[15] Cooney v. Fulcomer, 886 F.2d 41, 45 (3d Cir. 1989) (citing Shack v. Attorney General of Pennsylvania, 772 F.2d 1170 (3d Cir. 1985), *cert. denied*, 475 U.S. 1030 (1986)).  Moreover, any such failure to do so when Petitioner was transferred *to* Pennsylvania would have been on the part of Ohio and not Pennsylvania.  Nevertheless, the failure of the sending State authorities to provide a pre-transfer hearing under Article IV(d) of the IAD and the Extradition Act is not grounds for dismissal of the charges in the receiving State.  Shack v. Warden of Graterford Prison, 593 F. Supp. 1329, 1335 (E.D. Pa. 1984).  Thus, Petitioner has failed to show any prejudice as a result of not having a pre-transfer hearing in these two circumstances.

Furthermore, the sending State's failure to provide a pre-transfer hearing deprives the prisoner of the right to a hearing which is *narrowly* circumscribed.  The Third Circuit Court of Appeals has stated that the primary purpose of a pre-transfer hearing is not to determine the guilt of the prisoner, but rather "to assure that the prisoner transferred is the prisoner sought and trial in the receiving state reliably determines whether such is the fact."  Shack, 776 F.2d at 1173-74.  Indeed, the Supreme Court has stated that "[t]he person being extradited has no right to challenge the facts surrounding the underlying crime or the lodging of the custody request at the hearing.  Even at the later habeas corpus hearing, if any, he is permitted to question only" such matters as whether the extradition documents on their face are in order and whether he has been charged

---

[15] Petitioner's Pennsylvania state court criminal docket sheet indicates that an Order granting transport was filed on July 26, 2004, and the Sheriff's Transport Return was filed on August 11, 2004.  The docket is silent as to whether Petitioner received a pre-transfer hearing in Ohio or signed a voluntary waiver consenting to the return to Pennsylvania to face the charges against him.  However, this information would likely appear on the docket sheet for Petitioner's Ohio criminal case and not his criminal case in Pennsylvania.

with a crime and is the person named in the request. <u>Cuyler</u>, 449 U.S. at 443 n.11 (citing

<u>Michigan v. Doran</u>, 439 U.S. 282, 289 (1978).

Our sister court has stated that

> . . . the receiving state's conviction of the extradited prisoner, rendered only after the receiving jurisdiction's decision to hold the prisoner for trial, and subsequent prosecution presumptively in accord with the mandate of due process, is ample assurance that the individual transferred from the asylum state is the person named in the receiving state's indictment. Thus, while prisoners deprived of a pre-transfer hearing lose the opportunity to challenge the demanding state's request for custody, the receiving jurisdiction remains obligated to establish the prisoner's identity and culpability by standards far more demanding than could be imposed in an extradition hearing. Deprivation of the limited pre-transfer hearing permitted by the Constitution, therefore, when considered in the context of a habeas corpus petition filed by a prisoner convicted in the receiving jurisdiction, cannot be considered a "fundamental defect which inherently results in a complete miscarriage of justice . . . ." <u>Davis v. United States</u>, [417 U.S. 333 (1974)].

<u>Shack</u>, 593 F. Supp. at 1335-36.

Finally, to the extent Petitioner claims that, following the imposition of his Pennsylvania

sentence, he was transferred back to Ohio without a pre-transfer hearing (to serve the remainder

of his sentence for the probation violation), and then subsequently transferred back to

Pennsylvania following completion of his Ohio sentence (to serve his sentence for the underlying

charges in this case), also allegedly without a pre-transfer hearing, the Court notes that he was

not entitled to pre-transfer hearings at such times because his sentences had already been

imposed and his transfers were not based on detainers related to any new arrest or untried

indictment, information or complaint. *See* <u>Carchman</u>, 473 U.S. at 727 n.5.

For the reasons stated above, the Court concludes that Petitioner is not entitled to habeas

relief on his claims relating to the violations of the IAD and Extradition Act.

## IV.    CERTIFICATE OF APPEALABILITY

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  As provided for in 28 U.S.C. § 2253, "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).   "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner has not made the requisite showing in these circumstances.  Accordingly, a certificate of appealability will be denied.

## V.    CONCLUSION

For the reasons stated herein, Petitioner's habeas corpus petition will be denied.  An appropriate order follows.

**AND NOW**, this 4th day of October, 2013,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 3) is **DENIED.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

<u>/s/ Lisa Pupo Lenihan</u>
Lisa Pupo Lenihan
Chief United States Magistrate Judge

Cc:  Joseph L. Bable
     GC-5063
     S.C.I. Huntingdon
     1100 Pike Street
     Huntingdon, PA  16654-1112
     *Via U.S. Postal Mail*

     Counsel of Record
     *Via ECF Electronic Mail*